558 F.2d 761
 The UNITED STATES of America, the Veterans Administration
and Director, Office of Workers' Compensation
Programs, United States Department of
Labor, Petitioners,
v.
BENDER WELDING & MACHINE CO. and American Mutual Liability
Insurance Co., Respondents.
The UNITED STATES of America, the Veterans Administration
and Director, Office of Workers' Compensation
Programs, United States Department of
Labor, Petitioners,
v.
BENDER WELDING & MACHINE CO. and American Mutual Liability
Insurance Co., Respondents.
 Nos. 76-1770, 76-1916.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 1, 1977.
 
 Frank D. McCown, U. S. Atty., Fort Worth, Tex., Harry L. Sheinfeld, U. S. Dept. of Labor, Washington, D. C., William Kanter, Neil H. Koslowe, Rex E. Lee, Asst. Atty. Gen., Appellate Sec., Civil Div., Dept. of Justice, Washington, D. C., for petitioners.
 W. Boyd Reeves, Mobile, Ala., for respondents.
 The Benefits Review Bd., Washington, D. C., for other interested parties.
 Petitions for Review of Orders of the Benefits Review Board, Department of Labor (Alabama Cases).
 Before WISDOM, CLARK and RONEY, Circuit Judges.
 RONEY, Circuit Judge:
 
 
 1
 These two consolidated cases present the common legal question of whether the United States can recover the cost of medical care provided through a Veterans Administration hospital to disabled or injured veteran-employees covered by the Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 901 et seq. The Benefits Review Board denied recovery. We reverse on the ground that the Government, to which the employees had voluntarily assigned their compensation claims, was by subrogation entitled to reimbursement for the expense of medical service furnished the employees.
 
 
 2
 The facts of the two cases are similar. In both cases, veteran-employees, who worked as sandblasters for respondent Bender Welding & Machine Company, a maritime employer subject to the Longshoremen's and Harbor Workers' Compensation Act, were hospitalized in V.A. hospitals for treatment of job-related non-service-connected disabilities. Both signed statements prior to admission verifying that they were veterans and were "unable to defray the expenses of necessary hospital care."[1] Upon subsequent discovery of each employee's eligibility for compensation benefits, the hospital billed the employees for the cost of medical care, and took from both assignments of their medical expense recovery rights under the Longshoremen's and Harbor Workers' Compensation Act.[2]
 
 
 3
 It is undisputed that the Longshoremen's Act imposes a duty upon the employers to pay the reasonable cost of medical care furnished to the employees for these job-related disabilities or injuries. 33 U.S.C.A. §§ 901(a), 907(a). Had the medical care been furnished by non-Veterans Administration hospitals, there would presumably be no resistance to payment therefor by the employers or their insurance carriers. Recovery was denied simply because the expenses would have been paid to the Veterans Administration, which provided the care that would have otherwise been provided by "compensable" hospitals.
 
 
 4
 The fundamental point which controls this decision is whether Congress, in establishing the criteria for veterans' hospital care by the Government, has authorized the Veterans Administration to recover for such services from a workmen's compensation carrier. Although no legislation specifically answers this question, an appropriate understanding of the Veterans' Benefits Act as juxtaposed against the purpose and provisions of the Longshoremen's and Harbor Workers' Compensation Act leads to the conclusion that recovery is authorized. The key to the decision is an appreciation of the fact that the Veterans Administration is not required to provide free medical care to a veteran unless "he is unable to defray the expenses of necessary hospital care." If compensation coverage is treated as giving an employee the ability to defray expenses, it necessarily follows that medical services need not have been rendered by the Government without charge. If the services provided by the Veterans Hospital are not free, they would become a proper obligation of the compensation carrier to the employee.
 
 
 5
 The Longshoremen's and Harbor Workers' Compensation Act has as its general purpose the distribution of economic loss sustained by employees and their dependents as a result of personal injuries incurred in the course of employment to the industries and ultimately to the consuming public served by such employees. West Penn Sand & Gravel Co. v. Norton, 95 F.2d 498 (3d Cir. 1938). See also H.R.Rep.No.1441, 92d Cong., 2d Sess., reprinted in (1972) U.S.Code Cong. & Admin.News, pp. 4698, 4699. Although the compensation carrier would not be liable for any free services rendered the employee, it must pay for services which were not free.
 
 
 6
 The relevant Veterans' Benefits Act authorizes the Veterans Administration to provide hospital care to "any veteran for non-service-connected disability if he is unable to defray the expenses of necessary hospital." Veterans Health Care Expansion Act of 1973, P.L. 93-82, § 102, 87 Stat. 179 (current version at 38 U.S.C.A. § 610(a)(1)(B) (Supp.1977)). Pursuant to the Veterans' Benefits Act of 1957, P.L. 85-56, § 521, 71 Stat. 113 (current version at 38 U.S.C.A. § 621 (Supp.1977)), the Administrator has promulgated regulations which state that persons admitted to a V.A. hospital on this basis, who are entitled to reimbursement for medical care by reason of a state or federal workmen's compensation statute, will not be furnished medical care without charge to the extent that they are entitled to reimbursement. 38 C.F.R. § 17.48(d) (1976).[3] The Act fulfills a congressional purpose of providing free hospital services to veterans who have suffered non-service-connected disabilities and who are unable to pay for hospital care, in consideration for their prior service to their country. To include veterans legally entitled to the provisions of hospital care by third parties would be inconsistent with Congress's exclusion of those veterans who would otherwise be able to "defray the expense" of hospital care.
 
 
 7
 Nothing in the Veterans' Benefits Act indicates that Congress intended to relieve an employer of his statutory responsibility for providing medical treatment to his injured employees. See Marshall v. Rebert's Poultry Ranch & Egg Sales, 268 N.C. 233, 150 S.E.2d 423 (1966). The wisdom of this plan is apparent. To allow a compensation carrier to escape liability merely because the injured employee was a veteran treated at a V.A. hospital, rather than a private hospital, would be a windfall to the carrier, which has been paid a premium by the employer to cover this employee. The V.A. hospital has incurred expenses in treating the employee whom it was not obligated to treat, and should not have to absorb that cost. Charging a veteran for the medical care costs that he is entitled to receive from a workmen's compensation carrier violates the purpose of neither statute.
 
 
 8
 Where the Veterans Administration has taken a voluntary assignment of a veteran-employee's compensation claim, as prescribed by the regulations, 38 C.F.R. § 17.48, it is entitled to recover the medical care cost as a subrogee of the employee's rights.
 
 
 9
 This holding is consistent with this Court's decision in Pennsylvania National Mut. Cas. Ins. Co. v. Barnett, 445 F.2d 573 (5th Cir. 1971). There we sustained the workmen's compensation insurance carrier's position that the V.A. hospital's recovery for medical treatment rendered an injured employee was, by regulation, conditioned upon the procurement of an assignment.
 
 
 10
 Although we need not address the third-party beneficiary claims of the Government, we note the analogy between this decision and the third-party beneficiary cases in which the Government has been allowed reimbursement from a liability insurer for the cost of medical care provided to an injured veteran. See., e. g., United States v. Automobile Club Ins. Co., 522 F.2d 1 (5th Cir. 1975); United States v. United Services Automobile Ass'n, 431 F.2d 735 (5th Cir. 1970); United States v. Government Employees Ins. Co., 461 F.2d 58 (4th Cir. 1972); United States v. State Farm Mutual Automobile Ins. Co., 455 F.2d 789 (10th Cir. 1972).
 
 
 11
 United States v. Standard Oil of California, 322 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947), was not a subrogation case, and reliance on the denial of recovery to the Government in that case is misplaced. In Standard Oil the Supreme Court held that, in the absence of legislation providing a right of recovery, the Government could not recover from a tort-feasor amounts expended for an injured soldier's hospitalization and for his compensation paid during disability. The injured soldier had previously accepted payment from the tort-feasor's insurer and executed a release. The case dealt only with the Government's independent right of recovery against the tort-feasor. The Court noted expressly
 
 
 12
 (t)he Government's claim, of course, is not one for subrogation. It is rather for an independent liability owing directly to itself as for deprivation of the soldier's services and "indemnity" for losses caused in discharging its duty to care for him consequent upon the injuries inflicted by appellants. . . . It is, in effect, for tortious interference by a third person with the relation between the Government and the soldier and consequent harm to the Government's interest, rights and obligations in that relation, not simply to subrogation to the soldier's rights against the tort-feasors.
 
 
 13
 332 U.S. at 304 n. 5, 67 S.Ct. at 1606 (citation omitted). Here the Government seeks no independent right of recovery, but only subrogation through voluntary assignments to the rights of the injured veteran-employees. There is no chance of double liability, as was the case in Standard Oil. The assignments operate to divest the veteran-employees of any rights they might have for the hospital cost and medical care. See United States v. Kirkland, 405 F.Supp. 1024 (E.D.Tenn., 1976). Standard Oil does not preclude the Government's subrogation to a veteran-employee's rights for workmen's compensation.[4]
 
 
 14
 In both of these cases, defendants seek to dismiss the petitions for review on the ground that the Government was not a proper party to seek review of the Board's decision because it did not participate in the proceedings before the Administrative Law Judge or the Benefits Review Board.
 
 
 15
 The Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 921(c) (Supp.1977), provides that "(a)ny person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in United States Court of Appeals for the circuit in which the injury occurred . . . ." The statute speaks not in terms of "parties" but in terms of "person(s) adversely affected or aggrieved." The Government was aggrieved by the Board's ruling which expressly held that neither the employee nor the Veterans Administration was permitted to recover the costs of care furnished by the V.A. hospital. With respect to the employee's claim for costs incurred at the V.A. hospital, the Government was in fact the real party in interest. The claimant himself had nothing to gain or lose by the Board's decision as to these costs, for he was required to pay the Veterans Administration only to the extent he was entitled to reimbursement by reason of workmen's compensation. 38 C.F.R. § 17.48(d) (1976). Only the Veterans Administration and the compensation carrier were affected by the decision. This is unlike a situation where an employee incurred costs for which he would be liable to the hospital whether or not he could recover from the compensation carrier. Under these circumstances, the Government was a "person adversely affected or aggrieved" by the Board's order and has standing to petition for review in this Court. The motion to dismiss is therefore denied.
 
 
 16
 The judgments of the Benefits Review Board are reversed, and the cases are remanded for entry of awards in favor of the Government.
 
 
 17
 REVERSED AND REMANDED.
 
 
 
 [1]
 Until amendment in 1976, the Veterans' Benefits Act provided in pertinent part:
 (a) The Administrator, within the limits of Veterans' Administration facilities, may furnish hospital care or nursing home care which he determines is needed to
 (1) * * *
 (B) any veteran for a non-service-connected disability if he is unable to defray the expenses of necessary hospital care.
 Veterans' Benefits Act of 1957, P.L. 85-56, § 510, 71 Stat. 111, as amended P.L. 85-857, 72 Stat. 1141 (1958); P.L. 87-583, 76 Stat. 381 (1962); P.L. 89-358, § 8, 80 Stat. 27 (1966); P.L. 93-82, § 102, 87 Stat. 180 (1973). See also 38 C.F.R. § 17.47 (1976). Congress in 1976 eliminated the male pronouns and substituted gender-neutral terms. 38 U.S.C.A. § 610 (Supp.1977).
 
 
 [2]
 The assignment, VA Form 10-2381, provided in part:
 For a valuable consideration I hereby assign to the Administrator of Veterans Affairs and his successors in such Office, to the extent hereinafter indicated, all claims, demands, entitlements, judgments, administrative awards, and the proceeds thereof, and all causes of action which I now have, and which I may have hereafter, by reason of any liability of third parties entitling me to hospital care, or medical or surgical treatment, or to reimbursement for all or part of the cost of any such; or recovery of damages for all or part thereof:
 (a) based on contract, partially enumerated here as (1) membership in a union, fraternal or other organization; (2) rights under a group hospitalization plan or under any insurance contract or plan which provides for payment or reimbursement for the cost of medical or hospital care,
 (b) based on statute, State or Federal (other than P.L. 87-693, 76 Stat. 593), and regulations promulgated pursuant thereto, partially enumerated here as (1) "workmen's compensation" statutes; (2) "employer's liability" statutes; (3) right to "maintenance and cure" in admiralty.
 The extent of this assignment is an amount equal to the total reasonable charges for hospital care, medical, surgical, and clinical treatment, or any of them, including ambulance transportation and other auxiliary services received by me. This assignment does not include any sums to which I am entitled on a fixed basis which do not depend upon the amount incurred or disbursed by me for such care; (sometimes referred to in the insurance business as a right to indemnity).
 
 
 [3]
 38 C.F.R. § 17.48(d) (1976) provides in part:
 (d) Persons hospitalized pursuant to paragraph . . . (d) . . . of § 17.47, who it is believed may be entitled to hospital care or medical or surgical treatment or to reimbursement for all or part of the cost thereof by reason of any one or more of the following:
 (1) . . . (iii) "Workmen's Compensation" or "employer's liability" statutes, State or Federal; . . . or
 (2) By reason of statutory or other relationships with third parties, including those liable for damages because of negligence or other legal wrong; will not be furnished hospital care, medical or surgical treatment, without charge therefor to the extent of the amount for which such parties, referred to in paragraph (d)(1) . . . of this section, are, or will become liable. Such patients will be requested to execute an appropriate assignment as prescribed in this paragraph. Patients who, it is believed, may be entitled to care under any one of the plans in paragraph (d)(1) of this section, will be requested to execute VA Form 10-2381, Power of Attorney and Agreement. . . . Notice of this assignment will be mailed promptly to the party or parties believed to be liable. When the amount of charges is ascertained, bill therefor will be mailed such party or parties.
 
 
 [4]
 It is noted that Congress responded to Standard Oil by enacting the Medical Care Recovery Act, 42 U.S.C.A. § 2651. See S.Rep.No.1945, 87th Cong., 2d Sess., reprinted in (1962) U.S.Code Cong. & Ad.News, 2637, 2637-2639. That Act allows the United States to recover from a tort-feasor the reasonable value of care furnished to an injured soldier or veteran. The statute further provides that the Government shall be subrogated to any right or claim that the individual shall have against the tort-feasor to the extent of that right or claim. Although the statute is limited in operation to tort claims, see Pennsylvania National Ins. Co. v. Barnett, 445 F.2d 573 (5th Cir. 1971), and is inapplicable to the instant case, it does indicate a congressional policy favoring recovery by the Government through subrogation to the rights of the injured person in damages for the care and treatment furnished. Id. at 2640-2641. In a letter addressed to the Chairman of the House Committee on the Judiciary, the Administrator of Veterans Affairs commented on the proposed legislation:
 The Veterans' Administration has had in effect for many years regulations which provide for the taking of an assignment of the veteran's rights to the extent of the cost of non-service-connected hospital and medical care furnished by this agency for which third parties are, or may become, liable. . . .
 Enactment of the bill will strengthen our position in this area and ensure more uniform recognition by the courts of our right of action. . . .
 Id. at 2651.